CHESAPEAKE MICROFILM, INC. v. NORTH CAROLINA DEPARTMENT OF ENVIRONMENT, HEALTH AND NATURAL RESOURCES

No. 9221SC162

(Filed 7 September 1993)

**Environmental Protection, Regulation, and Conservation § 84 (NCI4th) — waste disposal system operated without permit — willful violation — maximum penalty — no proof of actual damages**

A superior court judgment was reversed and a penalty of $30,862.22 imposed by the North Carolina Environmental

Management Commission was reinstated where an environmental technician for the Division of Environmental Management observed a black hose extending from Chesapeake's building to a drainage ditch; the Director of DEM found that Chesapeake had operated a disposal system in violation of N.C.G.S. § 143-215.1(a)(2) on three occasions; the Director imposed a penalty of $10,000.00 for each violation plus $862.22 for the cost of investigation, for a total $30,862.22; Chesapeake filed a petition for a contested case hearing; the Administrative Law Judge recommended that the Environmental Management Commission uphold the penalty; the Commission did so; and the superior court found, among other things, that the Commission had relied upon two non-statutory factors, harm to the credibility of the regulatory program and harm to the regulated community, with no competent supporting evidence and no evidence of explicit statutory criteria; and the court concluded, among other things, that "harm" does not include generalized damage to competition or the regulatory program resulting from simple violation of the law, that there must be evidence of harm before the Commission can consider harm, and that the $30,000 penalty was arbitrary, capricious, contrary to law, and unsupported by substantial evidence in the record. The phrase "degree and extent of harm" in N.C.G.S. § 143-215.6(a)(3) encompassed more than physical damage to the environment; it included damage to the regulatory program which results from a willful and insensitive violation of the environmental standards. The Court of Appeals could discern no means by which specific damage to the enforcement of the statute or unfair advantage over competitors could be quantified and took judicial notice that certain violations, especially willful violations such as in this case, undermine the objectives of the regulatory program. The Court recognized that a person who intentionally fails to adhere to the mandates of the regulatory scheme thereby gains an economic advantage over others who comply with the law by expending funds to follow the regulations. Furthermore, the trial court erred by finding that the testimony of the Director of the Division of Environmental Management concerning harm to the regulatory process and community was not competent to support the Commission's findings.

**Am Jur 2d, Pollution Control § 182 et seq.**

Judge LEWIS dissenting:

Appeal by respondent State of North Carolina from judgment entered 14 November 1991 by Judge Peter W. Hairston in Forsyth County Superior Court. Heard in the Court of Appeals 13 January 1993.

*Moore and Brown, by B. Ervin Brown II and David B. Puryear, Jr., for petitioner appellee.*

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Francis W. Crawley, for respondent appellant.*

COZORT, Judge.

Respondent Department appeals from a judgment by the superior court (1) vacating an order of the North Carolina Environmental Management Commission (Commission) imposing a $30,862.22 penalty against petitioner Chesapeake for violations of N.C. Gen. Stat. § 143-215.1(a)(2) (1987) and (2) remanding the cause to the Commission for imposition of a penalty not to exceed $862.22, the cost of the investigation. We reverse and remand for reinstatement of the $30,862.22 penalty.

The statutory and administrative provisions at issue in this appeal are N.C. Gen. Stat. § 143-215.1(a)(2), N.C. Gen. Stat. § 143-215.6(a) (1987), and N.C. Admin. Code tit. 15, r. 2J .0006 (April 1986) (recodified as N.C. Admin. Code tit. 15A, r. 2J .0006 (December 1990) ). N.C. Gen. Stat. § 143-215.1(a)(2) prohibited a person from constructing or operating a disposal system without receiving a permit from the Commission and complying with the permit conditions. Since the institution of the present action, § 143.215.6(a) has been amended. The amended statute is not at issue in this appeal. The statute applicable to this appeal, N.C. Gen. Stat. § 143-215.6(a), provided:

(a) Civil Penalties.—

(1) A civil penalty of not more than ten thousand dollars ($10,000) may be assessed by the Commission against any person who:

* * * *

b. Is required but fails to apply for or to secure a permit required by G.S. 143-215.1, or who violates or fails

to act in accordance with the terms, conditions, or requirements of such permit.

\* \* \* \*

(3) In determining the amount of the penalty the [Environmental Management] Commission shall consider the *degree and extent of harm* caused by the violation and *the cost of rectifying the damage.*

(Emphasis added.) Pursuant to N.C. Admin. Code tit. 15, r. 2J .0006, the Commission was required to consider the following factors in determining the amount of penalty to be assessed:

(1) Gravity of the violation and the degree and extent of harm, including but not limited to the following:

\* \* \* \*

(ii) type of other violation,

(iii) duration,

(iv) cause,

(v) effect on receiving waters, public health, and fish or wildlife,

(vi) effectiveness of preventive or responsive measures taken by violator;

\* \* \* \*

(2) Cost of rectifying any damage;

(3) The violator's previous record in complying or not complying with the laws and implementing regulations of the Commission[.]

The underlying facts are not in dispute. On 9 September 1986, Mr. Thomas Gray Hauser, Jr., an environmental technician for the Division of Environmental Management (DEM), observed a black hose extending from the second floor of Chesapeake's building to a drainage ditch which eventually emptied into woods across the street. On 17 September 1986, Mr. Hauser, and another DEM employee, Mr. Michael Mickey, observed gray water flowing from the black hose into the ditch. On 18 September 1986, and 21 October 1986, Mr. Hauser observed liquid discharging from the black hose. Analysis of samples of water taken on each of the three dates

showed increased levels of silver and chromium. In September 1986, Mr. Hauser observed that the leaves on the trees located near the waste water pool had brown edges; he did not observe any dead animals, fish or wildlife.

On 2 April 1987, the Director of DEM, Mr. R. Paul Wilms, found that on three occasions Chesapeake had operated a disposal system in violation of N.C. Gen. Stat. § 143-215.1(a)(2). Director Wilms imposed a penalty of $10,000.00 for each violation, plus $862.22 for the cost of investigation, for a total penalty of $30,862.22. Plaintiff filed a petition for a contested case hearing in the Office of Administrative Hearings (OAH). The petition was originally dismissed for failure to prosecute; the matter was later heard upon motion for reconsideration with OAH.

On 20 April 1990, Administrative Law Judge Thomas R. West addressed the issue of the appropriate penalty for petitioner's three violations and recommended that the Commission uphold the penalty assessed. On 11 January 1991, the Commission upheld the imposition of the penalty, finding in pertinent part, the following: petitioner admitted to operating the disposal system without a permit; Mr. Wilms assessed the penalty, even though the facts did not indicate that the discharge reached state waters, because there was evidence that the disposal system had been constructed and used without a permit; Mr. Wilms considered the standards listed in N.C. Admin. Code tit. 15, r. 2J .0006 in assessing the penalty; Mr. Wilms considered petitioner's willful disregard of the requirement to be the cause of the violation; even though there was no documented actual damage, Mr. Wilms assessed the penalty because the statutory violation harmed the state and regulated community; the state program is harmed by willful disregard of the law because the program is denied the opportunity to assess the potential effect of the proposed discharge on the environment and to discuss alternatives to a direct discharge; the regulated community is harmed when a business competitor disregards the law and enjoys some economic benefit through noncompliance; and harm can exist even though there may not be physical damage to the environment. Based upon the findings of fact, the Commission concluded, in part:

4. Respondent could and did properly consider the harm caused by the violation as it relates to the effectiveness of the Respondent's regulatory program and by the negative impact an unpermitted disposal system has on the members of

the regulated community who comply with the law and who bear the additional costs associated with properly obtaining permits since this is a permissible interpretation of harm as set forth in G.S. 143-215.6(a)(3) and because these considerations are inherent in any regulatory program.

5. A civil penalty of $10,000.00 for each of three violations of G.S. 143-215.1(a)(2) plus $862.22 in investigative costs is reasonable, appropriate and in accordance with the statutory criteria established in G.S. 143-215.6 and the standards set forth in 15 NCAC 2J .0006.

On appeal to superior court, Judge Peter Hairston found in pertinent part: in assessing the penalty, the Commission relied upon two non-statutory factors, harm to the credibility of the regulatory program and harm to the regulated community; there was no competent evidence of harm to the regulatory program or regulated community; there was no evidence of the explicit statutory criteria—the degree and extent of harm and the cost to rectify damage; there was no evidence that petitioner committed other violations; there was no measurement of any specific amount of discharge from the system; there was no evidence of detrimental effect on receiving waters, public health, and fish or wildlife; there was no cost to repair damage because no damage was shown; and no record of petitioner's noncompliance when the penalty was assessed.

Based upon the findings of fact, Judge Hairston concluded in pertinent part: the Commission erred in concluding that the "harm" caused by the violation included harm to the regulated community and harm to the regulatory program; "harm" means, at most, proven specific damage to the environment or persons or proven specific damage to the enforcement of the statute other than a simple willful violation; "harm" does not include generalized damage to competition or the regulatory program resulting from simple violation of the law; even if such factors are considered "harm" within the meaning of the statute, there must be evidence of the harm before the Commission can consider harm; there was no evidence of harm to competitors or the regulatory program beyond the mere opinions of the regulatory personnel; the Commission made no evidentiarily supported findings of fact or conclusions of law regarding the "harm" suffered by the competitive and regulatory communities; the testimony of Mr. Wilms and the entire record on review do not contain substantial, competent evidence

that the regulatory program and community were negatively impacted as a result of the violations; Mr. Wilms could not point to actual harm nor accurately assess the degree and extent of any harm caused by the violations; Mr. Wilms had no knowledge other than a generalized opinion; the Commission's findings of fact are in error and insufficient because the Commission apparently reviewed the department's actions rather than made an independent decision; the Commission's findings and conclusions of law are in error because there was no basis in the evidence or statute for the department to apply the regulatory standards as it did in assessing the maximum penalty; the Commission's decision assessing the $30,000.00 penalty is arbitrary, capricious, contrary to law and the constitution, and unsupported by substantial evidence in the record; the Commission's decision assessing the costs of the agency's investigation is supported by competent evidence and authorized by law. Accordingly, Judge Hairston vacated the Commission's final decision and remanded the case to the Commission for assessment of a penalty not to exceed the $862.22 cost of the investigation.

On appeal, respondent argues that the superior court erred in (1) interpreting the civil penalty statute; (2) finding that there was no evidence to support the Commission's findings of fact and conclusions of law; and (3) finding the Commission's decision to be arbitrary and capricious.

Our review is limited to determining, in light of the whole record, whether the superior court made any errors of law in applying the standards of review set forth in N.C. Gen. Stat. § 150B-51(b) (1991). *Scroggs v. N.C. Criminal Justice Standards Comm.*, 101 N.C. App. 699, 701-02, 400 S.E.2d 742, 744 (1991). N.C. Gen. Stat. § 150B-51 provides that the superior court may reverse or modify the agency's decision if the substantial rights of the petitioner may have been prejudiced by the agency's findings, conclusions, or decisions which are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

In determining whether an agency's decision is supported by substantial evidence or is arbitrary and capricious, an appellate court applies the "whole record test" which requires the examination of all competent evidence. *Rector v. N.C. Sheriffs' Educ. and Training Standards Comm.*, 103 N.C. App. 527, 532, 406 S.E.2d 613, 616 (1991). In determining whether an agency made an error in interpreting a statutory term, an appellate court may substitute its own judgment and employ de novo review. *In re Appeal of North Carolina Savings and Loan League v. Credit Union Comm.*, 302 N.C. 458, 465, 276 S.E.2d 404, 410 (1981). An agency's interpretation of a statute

> is traditionally accorded some deference by appellate courts, [although] those interpretations are not binding. "The weight of such [an interpretation] in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."

*Brooks, Comr. of Labor v. McWhirter Grading Co., Inc.*, 303 N.C. 573, 581, 281 S.E.2d 24, 29 (1981) (quoting *In re Appeal of North Carolina Savings and Loan League*, 302 N.C. 458, 466, 276 S.E.2d 404, 410 (1981)) (citation omitted).

First, we consider respondent's argument that the superior court erred in interpreting the phrase "degree and extent of harm" in § 143-215.6(a)(3). The superior court concluded that "the word [harm] means, at most, proven specific damage to the environment or persons or *proven specific damage to the enforcement of the statute* other than a simple willful violation." (Emphasis added.) Respondent argues that the superior court's interpretation "requires the Commission to equate the amount of the civil penalty assessed to the measurable physical damage to the affected environment." This construction, respondent argues, completely eliminates consideration that illegal discharges of pollution damage the State's regulatory program and erode the public policy of achieving and maintaining a total environment of superior quality. We agree.

"[T]he primary function of a court is to ensure that the purpose of the Legislature in enacting the law . . . is accomplished. The best indicia of that legislative purpose are 'the language of the statute, the spirit of the act, and what the act seeks to accomplish.'" *State ex rel. Comr. of Insurance v. N.C. Rate Bureau*, 300 N.C. 381, 399, 269 S.E.2d 547, 561 (1980) (quoting *Stevenson v. City of Durham*, 281 N.C. 300, 303, 188 S.E.2d 281, 283 (1972)) (citation omitted). In part, the stated purpose of Chapter 143 is to design water and air purity standards

> to protect human health, to prevent injury to plant and animal life, to prevent damage to public and private property, to insure the continued enjoyment of the natural attractions of the State, to encourage the expansion of employment opportunities, to provide a permanent foundation for healthy industrial development and to secure for the people of North Carolina, now and in the future, the beneficial uses of these great natural resources.

N.C. Gen. Stat. § 143-211 (1990). A civil penalty may be imposed to deter conduct which is contrary to a regulatory scheme. *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 381, 379 S.E.2d 30, 35 (1989).

We find that the phrase "degree and extent of harm" in § 143-215.6(a)(3) encompasses more than physical damage to the environment; it includes damage to the regulatory program which results from a willful and insensitive violation of the environmental standards. The superior court's conclusion that "harm" includes only "proven specific damage to the enforcement of the statute," is, in effect, a holding that harm to the regulatory program cannot be a factor in assessing the penalty. We discern no means by which (1) specific damage to the enforcement of the statute, or (2) unfair advantage over competitors could be quantified. We therefore take judicial notice that certain violations, especially willful violations such as are present in this case, undermine the objectives of the regulatory program. Further, we recognize that a person who intentionally fails to adhere to the mandates of the regulatory scheme thereby gains an economic advantage over others who comply with the law by expending funds to follow the regulations.

We next consider whether the superior court erred in finding that the Commission's findings of fact and conclusions of law were unsupported by substantial evidence. "Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Comr. of Insurance v. Fire Insurance Rating Bureau,* 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977). "The credibility of witnesses and the probative value of particular testimony are for the administrative body to determine, and it may accept or reject in whole or part the testimony of any witness." *State ex rel. Comr. of Insurance v. N.C. Rate Bureau,* 300 N.C. at 406, 269 S.E.2d at 565.

The Director of DEM, Mr. R. Paul Wilms, testified, in pertinent part, as follows: Evidence was presented to him that a disposal system had been constructed and utilized without a permit. In assessing the penalty, he considered all the factors set forth in N.C. Admin. Code tit. 15, r. 2J .0006. There was no evidence relating to three of the factors: (1) effect on receiving waters, public health, fish or wildlife; (2) cost of rectifying any damage; and (3) the violator's previous record in complying or not complying with the laws in implementing the regulations of the Commission. There was evidence of three of the factors: (1) other violations, (2) cause, and (3) duration. There was a violation of failing to secure a permit before building a disposal system. The violation was significant because it was willful and belligerent because while Chesapeake had knowledge of the permit requirement, it used the system as an expedient instead of obtaining the permit. Evidence had been presented to him that Mr. Cox stated that Chesapeake had been discharging wastes in this manner for five years and would continue to do so to avoid the costs of complying with the law. The cause of the violation was "willful, egregious, and not only unnecessary but unconscionable." Mr. Wilms stated that he was not aware of any preventative or responsive measures taken by Chesapeake. He further testified that he assessed a penalty even though there was no "actual" damage because

> [t]here's also harm to the rest of the regulated community and to the state itself. The credibility of the state's program to protect the environment is harmed by a willful disregard of the law. The rest of the regulated community, most of which does incur the costs of compliance is harmed when a member of its, of that community disregards the law and enjoys some economic benefit through noncompliance. So there's a great deal of harm where there may not be any physical damage to the environment.

CHESAPEAKE MICROFILM v. N.C. DEPT. OF E.H.N.R.

[111 N.C. App. 737 (1993)]

The Commission made findings of fact in accordance with the testimony of Mr. Wilms. The superior court concluded that Mr. Wilm's testimony concerning harm to the regulatory process and community was not competent evidence to support the Commission's findings. We disagree. We find Mr. Wilms well qualified to express an opinion as to the harm caused by willful violations of the regulatory scheme he is in charge of enforcing. In 1976, Mr. Wilms began working with the North Carolina Department of Environment, Health, and Natural Resources in the Division of Environmental Management as a water quality engineer. Mr. Wilms subsequently supervised the Water Quality and Classifications Program and the Air Quality Program. In 1981, he was named Assistant Director for Programs of DEM. From 1985 until the time of the administrative hearing, Mr. Wilms served as Director of DEM. As noted previously, specific harm to the enforcement of a statute or harm to the regulated community cannot be quantified. Based upon eleven years of experience, Mr. Wilms considered factors set forth in N.C. Admin. Code 15, r. 2J .0006, including the nature, duration, and willfulness of the violation, and concluded that the maximum penalty should be imposed. Reviewing the whole record, we find that the evidence supported the Commission's findings of fact, and the findings of fact supported the conclusions of law.

We further find that the Commission's decision was not arbitrary and capricious. The Commission considered the evidence, made findings of fact in accordance with the evidence, and concluded that the penalty assessed was justified.

We hasten to add that not every violation where the actual environmental harm is minimal will justify the maximum penalty. But where, as here, the violation is willful, egregious and conducted as an expedient way to avoid the costs of compliance with the law, the imposition of the maximum penalty is not arbitrary and capricious.

The judgment of the superior court is reversed and the cause is remanded for reinstatement of the penalty of $30,862.22.

Reversed and remanded.

Chief Judge ARNOLD concurs.

Judge LEWIS dissents.

NISSAN MOTOR CORP. v. FRED ANDERSON NISSAN

[111 N.C. App. 748 (1993)]

Judge LEWIS dissenting.

I respectfully dissent. The violation was not so egregious as to warrant so harsh a penalty when there was no evidence whatever of harm to the environment.

The majority interprets the phrase "degree and extent of harm" in former N.C.G.S. § 143-215.6(a)(3) to include damage to the regulatory program resulting from willful violations of environmental standards. By expanding the meaning of the statute to encompass "harm" to the regulatory program, the majority creates a new standard for penalizing willful violations even absent physical damage or harm to the environment. Although the majority qualifies the opinion by stating that not every violation without actual harm would justify the maximum penalty, it provides no clear guidelines for how the standard should be applied. The opinion would, I believe, create an arbitrary basis for maximizing any willful violation.

I agree with the Superior Court's interpretation of the statute concluding that:

the word [harm] means, at most, proven specific damage to the environment or persons or proven specific damage to the enforcement of the statute other than a simple willful violation.

The trial judge made proper findings under this interpretation in reversing the assessment of the maximum penalty. I would affirm the decision of the Superior Court and therefore respectfully dissent.