IN THE MATTER OF THE LICENSE OF DARRYL BURKE CHEVROLET, INC., SAFETY EMISSION INSPECTION STATION, LICENSE NO. 20749 DARRYL BURKE CHEVROLET, INC., PETITIONER v. FREDERICK AIKENS, ACTING COMMISSIONER OF MOTOR VEHICLES, RESPONDENT

No. COA97-1528

(Filed 6 October 1998)

## 1. Administrative Law— whole record test—substantial evidence

The trial court did not err when reviewing an agency decision to suspend petitioner's Safety Equipment Inspection Station License in its application of the whole record standard of review. Even though the court ordered stricken certain findings and one conclusion by the Division of Motor Vehicles, the record is replete with substantial evidence to support the findings of fact which in turn fully justify the conclusion.

## 2. Motor Vehicles— safety inspection—missing catalytic converter—Type I violation

The trial court did not err in upholding an agency determination that failure to detect a missing catalytic converter during a motor vehicle safety inspection was a Type I violation under N.C.G.S. § 20-183.8B(a). A vehicle must pass both a visual inspection and an exhaust emissions analysis to pass an emissions inspection and the vehicle here was given an inspection sticker after only an exhaust analysis. Although petitioner contends that the the failure to perform a complete inspection was only a minor Type II violation because the truck met minimum allowed emissions levels, a Type I violation "directly affects the emission reduction benefits of the emissions inspection program" and common sense dictates that the vehicle would have had fewer

emissions with the device, thus having an effect on the emission reduction benefits of the program.

Judge GREENE dissenting.

Appeal by petitioner from judgment entered 4 September 1997 by Judge David Q. LaBarre in Wake County Superior Court. Heard in the Court of Appeals 25 August 1998.

*Clifton and Singer, L.L.P., by Benjamin F. Clifton, Jr., for petitioner-appellant.*

*Attorney General Michael F. Easley, by Special Deputy Attorney General, Hal F. Askins, and Assistant Attorney General, Jeffrey R. Edwards, for respondent-appellee.*

SMITH, Judge.

Petitioner, Darryl Burke Chevrolet, Inc. (Darryl Burke), appeals the trial court's summary judgment upholding a Safety Equipment Inspection Station License suspension order by the North Carolina Division of Motor Vehicles (the Division). Darryl Burke contends the Division issued the order based on a misinterpretation of N.C. Gen. Stat. § 20-183.8B (1995) (amended 1997) and N.C. Gen. Stat. § 20-183.8C (1995) (amended 1997). Petitioner argues that the trial court erred in (1) concluding the hearing officer's findings of fact and conclusions of law support the suspension order, and (2) upholding the Division's determination that petitioner's failure to detect a missing catalytic converter was a Type I violation rather than a Type II. For reasons set forth herein, we affirm.

Relevant facts and procedural information include the following: On 6 August 1996, Robert E. Jones (Jones), an undercover inspector with the Division, presented a Chevrolet truck to the service center of Darryl Burke for a safety and emissions inspection. Darryl Burke is licensed as a North Carolina Motor Vehicle Safety/Emission Equipment Inspection Station by the Division.

Prior to inspection, the Division altered the truck's emission system by replacing the catalytic converter with a piece of straight pipe. The truck was never raised for a visual inspection of the emissions system and Darryl Burke failed to detect the missing catalytic converter. Petitioner gave the truck a new inspection sticker and Jones paid the inspection fee.

**DARRYL BURKE CHEVROLET v. AIKENS**

[131 N.C. App. 31 (1998)]

On 20 September 1996, the Division determined that Darryl Burke committed a Type I violation under G.S. § 20-183.8B(a) and issued a suspension order. Petitioner's inspection license was suspended by the Division for a six-month period and a one-hundred dollar penalty was assessed. Darryl Burke requested a hearing before the Division which was held 15 October 1996. The Division upheld the license suspension and penalty in an order issued 24 October 1996.

Petitioner filed a petition for judicial review 1 November 1996. The trial court upheld the Division's suspension order by judgment entered 4 September 1997. Petitioner filed timely notice of appeal.

We note at the outset that Darryl Burke failed to include in its brief, assignments of error with references to the page numbers of the record on appeal as required by Rule 28(b)(5) of the Rules of Appellate Procedure. Such an omission and failure to follow the Appellate Rules subject an appeal to possible dismissal. *See Hines v. Arnold*, 103 N.C. App. 31, 404 S.E.2d 179 (1991). However, in our discretion and pursuant to Rule 2 of the Rules of Appellate Procedure, we consider Darryl Burke's arguments on the merits.

[1] Initially, we must determine the applicable standard of review. The trial court's standard for judicial review of an agency decision "depends upon the particular issues presented on appeal." *Amanini v. North Carolina Department of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994). Appellate review of the trial court's decision is two-fold and "examines the trial court's order for error of law." *Id.* at 675, 443 S.E.2d at 118. The appellate court must "(1) determin[e] whether the trial court exercised the appropriate scope of review, and if appropriate, (2) decid[e] whether the court did so properly." *Id.* at 675, 443 S.E.2d at 118-19.

We first note the trial court properly applied the "whole record" standard of review to determine if the agency decision was supported by "substantial evidence." *Id.* at 674, 443 S.E.2d at 118. *See ACT-UP Triangle v. Commission for Health Services*, 345 N.C. 699, 706, 483 S.E.2d 388, 392 (1997). Petitioner however, contends there was not sufficient findings of fact to support revocation of petitioner's license after the trial court, in effect, ordered stricken certain findings and one conclusion by the Division, upon determining they were "superfluous" and "did not affect petitioner's rights." Thus, we are required to determine if the remaining findings of fact are supported by substantial evidence in the entire record, and whether these findings justify the trial court's conclusion of law.

DARRYL BURKE CHEVROLET v. AIKENS

[131 N.C. App. 31 (1998)]

The trial court determined that substantial evidence existed to support the division's order, including the following findings of fact:

3. On 6 August 1996, a 1992 Chevrolet truck was presented for safety and emissions inspection at [petitioner's service department] by an undercover inspector for the [Division].

4. [F]rom the receipt and inspection certificate which was issued by [petitioner], the undercover inspector concluded [petitioner's employee had] conducted the inspection.

5. At the time of the "inspection" the vehicle . . . did not have as part of the emission control system a catalytic converter. The converter had been removed as part of the undercover investigation. . . .

. . . .

11. The vehicle during the inspection process was never raised to perform a visual inspection.

12. After the "inspection," a 8/97 inspection certificate was placed on the vehicle.

The trial court affirmed the Division's conclusion that petitioner failed "to inspect or properly inspect a motor vehicle by failing to detect a missing catalytic converter." The trial court reviewed the entire record for relevant evidence that a reasonable mind might consider sufficient to support its conclusion. *State ex rel. Commissioner of Insurance v. North Carolina Fire Insurance Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977). We hold that the record is replete with substantial evidence to support the findings of fact which in turn fully justify the conclusion. We also note that the Division did not cross-appeal from that portion of the judgment disregarding some of the administrative findings.

[2] Petitioner next contends the trial court erred in upholding the Division's determination that a Type I violation included the failure to detect a missing catalytic converter. Petitioner argues the Division misinterpreted G.S. § 20-183.8B(a) in categorizing serious Type I violations. The pertinent language deems a serious violation to be one which "directly affects the emission reduction benefits of the emissions inspection program." G.S. § 20-183.8B(a).

An incorrect statutory interpretation by an agency constitutes an error of law. N.C. Gen. Stat. § 150B-51(b)(4) (1997). Therefore, "when

**DARRYL BURKE CHEVROLET v. AIKENS**

[131 N.C. App. 31 (1998)]

the issue on appeal is whether a state agency erred in interpreting a statutory term, 'an appellate court [trial court] may substitute its own judgment [for that of the agency] and employ a *de novo* review.' " *Amanini*, 114 N.C. App. at 678, 443 S.E.2d at 120 (citing *Chesapeake Microfilm, Inc. v. North Carolina Department of E.H.N.R.*, 111 N.C. App. 737, 744, 434 S.E.2d 218, 221 (1993), *aff'd*, 337 N.C. 797, 448 S.E.2d 514 (1994)). We find that the trial court properly applied a *de novo* standard of review to determine whether the Division's order was affected by error of law. The trial court held

> petitioner's action of placing an emissions inspection sticker on the vehicle without first performing a visual inspection in accordance with G.S. § 20-183.3(b) to determine whether the vehicle's catalytic converter was present, constituted a Type I violation under G.S. § 20-183.8C(a)(1) at the time of the events in question.

To pass an emissions inspection under G.S. § 20-183.3(b), "a vehicle must pass *both* a visual inspection *and* an exhaust emissions analysis."(emphasis added). Darryl Burke gave the truck an inspection sticker after performing only the exhaust analysis. Petitioner's failure to perform a complete inspection violated G.S. § 20-183.8C(a)(1), which states that

> [p]ut[ting] an emissions inspection sticker on a vehicle without performing an emissions inspection . . . or after performing an emissions inspection in which the vehicle did not pass the inspection [constitutes a Type I violation].

A Type I violation "directly affects the emission reduction benefits of the emissions inspection program." G.S. § 20-183.8B(a).

Darryl Burke concedes that a complete inspection was not performed, but argues the violation was a minor, Type II violation. A Type II violation involves no license suspension and "reflects negligence or carelessness in conducting an emissions inspection . . . but does not directly affect the emission reduction benefits of the emissions inspection program." G.S. § 20-183.8B(a). Petitioner claims its failure to perform a visual inspection was a minor oversight not impacting the emission reduction benefits program because the vehicle passed the emission analysis. We disagree.

The version of G.S. § 20-183.8C applicable to the case *sub judice*, did not categorize a missing catalytic converter as a Type I or Type II violation. However, the statute expressly authorized the Division to "designate other acts" as Type I or Type II violations. G.S.

§ 20-183.8C(d). This court held that such agency designations have the "force and effect of law." *Amanini*, 114 N.C. App. at 678, 443 S.E.2d at 120.

Through the Division's interpretation of G.S. § 20-183.8B and G.S. § 20-183.8C, it designated a missing catalytic converter as an "other act" that affects the emission reduction benefits serious enough to be a Type I violation. Agency rulings and interpretations are not controlling upon the courts, but "do constitute 'a body of experienced and informed judgment' which have been 'given considerable and in some cases decisive weight.'" *Schultz v. W.R. Hartin & Son, Inc.*, 428 F.2d 186, 191 (4th Cir. 1970) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 89 L. Ed. 124, 129 (1944)). In discussing deference given by states to their agencies, the United States Supreme Court noted that

> [t]he weight of [an agency's interpretation] . . . will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.

*Skidmore*, 323 U.S. at 140, 89 L. Ed. at 129. *See also Brooks, Commissioner of Labor of North Carolina v. McWhirter Grading Company, Inc.*, 303 N.C. 573, 580-81, 281 S.E.2d 24, 29 (1981); *In re Appeal of North Carolina Savings & Loan League v. Credit Union Comm.*, 302 N.C. 458, 465-66, 276 S.E.2d 404, 410 (1981).

In the case *sub judice*, based on the Division's reasoning, experience, and consistency with similar regulations, the trial court properly upheld the Division's Type I designation for a missing catalytic converter. The Division notes that without a catalytic converter, the truck meets only minimum allowable levels for carbon monoxide and hydrocarbon emissions. To support this reasoning, the Division considered regulations governing exhaust emission controls in North Carolina. Under N.C. Admin. Code tit. 19A, r. 3D.0542 (June 1998) (section effective October 1994), a catalytic converter is listed as an emissions control device. If this device is missing, the exhaust emission shall not be approved. N.C. Admin. Code tit. 19A, r. 3D.0541 (June 1998) (section effective October 1994).

Darryl Burke argues the truck met required standards, and therefore any impact on the emission reduction benefits was minor. However, meeting minimum levels will not prevent the truck from impacting the emissions reduction benefits program. A catalytic con-

DARRYL BURKE CHEVROLET v. AIKENS

[131 N.C. App. 31 (1998)]

verter is "[a] reaction chamber typically containing a finely divided platinum-iridium catalyst into which exhaust gases from an automobile engine are passed together with excess air so that the carbon monoxide and hydrocarbon pollutants are oxidized to carbon dioxide and water." The American Heritage Dictionary, 247 (2d ed. 1982).

Common sense would dictate that if the tested vehicle met minimum emission standards without the catalytic converter, it would have had even less emissions of carbon monoxide and hydrocarbons with the device. Thus, failure to observe that the catalytic converter was missing had an effect on the emission reduction benefits of the program.

We take judicial notice of the fact that the statutes governing petitioner's conduct were amended, with changes effective July 1, 1997. G.S. § 20-183.8C(b)(3) and (b)(4). Such amendments expressly categorized petitioner's conduct as a Type II violation. However, no issue or argument was presented to this Court as to the effect, if any, of the subsequent legislative changes on the instant case. We further assume no such argument was presented to the trial court, and thus we do not address any such issue. Therefore, the trial court correctly held that the Division properly interpreted G.S. § 20-183.8B and G.S. § 20-183.8C. We hold that the trial court properly applied the appropriate standards of review, and its order is not affected by error of law.

Affirmed.

Judge TIMMONS-GOODSON concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I do not agree that the placing of an emission inspection sticker on Robert E. Jones's truck, which did not have a catalytic converter, constitutes a Type I violation within the contemplation of N.C. Gen. Stat. § 20-183.8C(a)(1).

I agree with the majority that an emission inspection station or inspector, prior to placing an emission inspection sticker on a vehicle, is required to perform a visual inspection of the "emission control devices" and an analysis of the exhaust emissions of the vehicle. N.C.G.S. § 20-183.3(b) (Supp. 1997). I further agree that a catalytic

converter is an emission control device, 19A NCAC 3D.0542 (June 1998), and thus placing an emission inspection sticker on a vehicle that does not have a catalytic convertor is a violation of the statute.

I do not agree, however, that placing an emission inspection sticker on a vehicle that does not have a catalytic convertor constitutes a Type I violation, because a Type I violation occurs only when the violation "directly affects . . . emission reduction." N.C.G.S. § 20-183.8B(a) (Supp. 1997). There is no evidence in this case that the absence of the catalytic converter affected emission reduction. The majority posits that the presence of a catalytic converter necessarily benefits emission reduction. That is so, however, only if the catalytic converter is working properly. Because an inspector is not required to determine if the converter is working properly, only that it is in place, N.C.G.S. § 20-183.3(b), it does not follow that its absence affects emissions.

The failure to observe the absence of a catalytic converter does constitute a Type II violation as it reflects "negligence or carelessness in conducting" an emission inspection. N.C.G.S. § 20-183.8B(a). Furthermore, to the extent the statute in effect at the time of this violation is ambiguous, the legislature has clarified its meaning by specifically providing, by amendment, that the failure to discover the absence of a catalytic converter is a Type II violation. N.C.G.S. § 20-183.8C(b)(3)(a) (Supp. 1997); *see General Motors Corp. v. Kinlaw*, 78 N.C. App. 521, 524-25, 338 S.E.2d 114, 118 (1985) (ascertaining legislative intent from amendments).

I would therefore reverse the order of the trial court.